UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROBERT SHANNON,

                           Plaintiff,

         v.                                                    1:05-CV-0555
                                                                  (LEK/DRH)
VERIZON NEW YORK, INC.,

                           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## <u>MEMORANDUM-DECISION AND ORDER</u>

Plaintiff Robert Shannon ("Plaintiff") commenced the instant action pursuant to the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* and the New York

Human Rights Law ("HRL"), N.Y. EXEC. LAW § 296 *et seq.*, claiming that Defendant Verizon

New York, Inc. failed to provide him with reasonable accommodation, subjected him to a

hostile work environment on account of his disability, and retaliated against him for engaging

in protected activity.  Currently before the Court are Defendant's Motion and Plaintiff's Cross-

Motion for summary judgment.


## I.  FACTS

As of 1996, Plaintiff was employed by Defendant principally doing field technician

work including splicing lines, removing manhole covers and climbing poles. Mem. of Law in

Support of Plntfs' Opp. to Deft's Motion for Summary Jud't (Dkt. No. 36) at 2.   Between 1996

and the present, Plaintiff has had the title of Telecommunications Technical Associate

("TTA") and worked at the TTA pay grade. Deft's Statement of Material Facts (Dkt. No. 32) at

¶¶ 3, 4.  In 1997, Plaintiff was diagnosed with cancer and underwent a radical prostatectomy.

Compl. (Dkt. No. 1) at ¶ 8.  The operation resulted in both incontinence and sexual

dysfunction.  Id. The former condition led Plaintiff's doctor to prescribe a 40 pound lifting

restriction.  Id. Defendant's job description for field technicians included lifting and/or moving

100 pounds.  Deft's Statement of Material Facts (Dkt. No. 32) at ¶ 2.  After Plaintiff's

operation, Defendant accommodated Plaintiff by allowing him to work as a field technician on

a special project in Troy, New York, with heavy lifting reduced or eliminated. Compl. (Dkt. No.

1) at ¶ 10; Mem. of Law in Support of Plntfs' Opp. to Deft's Motion for Summary Jud't (Dkt.

No. 36) at 2.   In this position, Plaintiff was able to accrue some overtime and was eligible for

advanced training opportunities.

In July 2003, Plaintiff took a medical leave of absence from Defendant to undergo a

hernia operation.  Id. at 3.  Plaintiff returned to work in early October 2003, at which time, the

special project he had worked on had ended.  Id.  In October 2003, Plaintiff was transferred

to Defendant's clerical office in Menands, New York and then to a maintenance center in

Albany, where he did clerical work until January 2004.  Id. at 3-4.  In response to Plaintiff's

complaints, Defendant returned Plaintiff to Defendant's Troy location to follow-up on old work

order projects from January 2004 to August 2004.  Id. at 3-4.

In approximately March 2004, Defendant placed Plaintiff in its Health Improvement

Committee ("HIC") process.  Deft's Statement of Material Facts (Dkt. No. 32) at ¶ 11.

Through this process, employees have a ninety (90) day period during which they are able to

search for available positions that they can perform notwithstanding any health restrictions.

Mem. of Law in Support of Deft's Motion for Summary Judgment (Dkt. No. 32) at  4.  During

this ninety (90) day period, Plaintiff applied for one position, central office technician.  Id. at

5. Plaintiff was not offered the central office technician position purportedly because it had a

lifting requirement of over 40 pounds.  Id.  In August 2004, Plaintiff was permanently assigned to work as a Construction Coordinator, a clerical position. Id.; Mem. of Law in Support of Plntfs' Opp. to Deft's Motion for Summary Jud't (Dkt. No. 36) at 5.  In this position, Plaintiff was supervised directly by James Murray and indirectly by Joseph Messina, the Director of Construction in the Albany, New York area.  Id.; Plntf's Statement of Material Fact (Dkt. No. 37) at ¶ 1.  On February 10, 2005, Plaintiff provided Murray with a doctor's note limiting Plaintiff to one hour per day of typing because of hand and wrist pain caused by carpal tunnel syndrome.  Mem. of Law in Support of Deft's Motion for Summary Judgment (Dkt. No. 32) at 5.  In March 2005, Defendant sent Plaintiff home.  Mem. of Law in Support of Plntfs' Opp. to Deft's Motion for Summary Jud't (Dkt. No. 36) at 5.  Plaintiff was out on disability leave from March 2005 until October 2005 to treat his carpal tunnel syndrome.  Id.; Mem. of Law in Support of Deft's Motion for Summary Judgment (Dkt. No. 32) at 5.  When Plaintiff returned to work in October 2005, he did not have any typing restrictions. Id.  Plaintiff has continued in the Construction Coordinator position.  Mem. of Law in Support of Deft's Motion for Summary Judgment (Dkt. No. 32) at 5.

Plaintiff alleges that, despite the lifting requirement included in the job description for field technicians, there are several field technician positions, such as inspector or locator, for which he is qualified and which would not violate his lifting restrictions. Compl. (Dkt. No. 1) at  ¶ 12.  Additionally, Plaintiff alleges that while serving as a construction coordinator he missed valuable opportunities for overtime pay and for professional training and enhancement.  Id. at ¶ 17, 18.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In applying this standard, courts must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'"  Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)).  Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted).  Rather, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor."  Brown, 257 F.3d at 252 (citation omitted).  Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

## III.  DISCUSSION

### A.  Failure to Accommodate

Plaintiff commenced the instant action under the ADA and the HRL.  To establish a claim under the ADA, Plaintiff must demonstrate that: "(1) plaintiff's employer is subject to the

ADA;[1] (2) plaintiff was disabled within the meaning of the ADA; (3) plaintiff was otherwise

qualified to perform the essential functions of [his] job, with or without reasonable

accommodation; and (4) plaintiff suffered [an] adverse employment action because of [his]

disability."  <u>Jacques v. DiMarzio, Inc.</u>, 386 F.3d 192, 198 (2d Cir. 2004) (internal citation

omitted).

      Defendant first contends that Plaintiff is not disabled within the meaning of the ADA

because he does not suffer from a physical impairment that substantially limits one or more

of his major life activities.  Plaintiff responds that he is disabled because his prostate gland

was surgically removed, thereby causing him to suffer from incontinence and erectile

dysfunction.  Plaintiff also argues that Defendant has regarded him as disabled and that he

has a record of being disabled.

      There are three ways that a person can qualify as being disabled under the ADA:

> "[I]ndividuals with a physical or mental impairment that substantially limits
> one or more of the major life activities of such individual are disabled
> within the meaning of the ADA.... A plaintiff is also disabled within the
> meaning of the ADA if [he] has a record of such an impairment....  Finally,
> a plaintiff is considered disabled under the ADA if [he] is regarded as
> suffering from a physical or mental impairment that substantially limits
> one or more of the major life activities, even if [he] does not actually suffer
> from such an impairment."

<u>Jacques</u>, 386 F.3d at 199 (internal quotations and citations omitted).  A "physical impairment"

is defined as a "physiological disorder, or condition... affecting one of more of the following

body systems: neurological, musculoskeletal... reproductive, digestive, genito-urinary, hemic

and lymphatic, skin, and endocrine."  29 C.F.R. §1630.2(h)(1).  A person is "substantially

limited" in the ability to perform a major life activity if, due to a mental or physical impairment,

---

[1] There is no dispute that Defendant is subject to the ADA.

the person is "[u]nable to perform a major life activity that the average person in the general population can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to... the average person in the general population...."  29 C.F.R. § 1630.2(j)(1), (2).  Major life activities includes "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(I).

### 1. Actually Disabled

According to the record evidence, Plaintiff experiences stress incontinence.  That means that "occasionally, he leaked with those conditions that would increase abdominal pressure...."  Fisher Dep. (Dkt. No. 40, Attach. 1) at 110.  Such abdominal pressure can be caused by lifting weight over approximately forty (40) pounds.  Shannon Dep. (Dkt. No. 40, Attach. 10) at 180.  Plaintiff also experienced some leakage at night.  Plaintiff's incontinence meets the definition of physical impairment, as it is a physical condition affecting his genito-urinary system.  See 29 C.F.R. §1630.2(h)(1); Rider v. Gen. Motors Corp., No. 03-CV-0701C(F), 2006 WL 1520084, at *13 (W.D.N.Y. May 26, 2006) (noting that EEOC regulations defining "physical impairment," while not binding on federal courts, provide useful guidance in interpreting the ADA).

Plaintiff claims that his condition results in a substantial limitation of the life activity of controlling urine emissions. Pltf.'s Mem. in Support of Opp. to Def.'s Motion for Summary Jud't (Dkt. No. 36) at 13.  Although the ability to control waste elimination is not specifically listed as a major life activity in the EEOC regulations, the Court of Appeals for the Second Circuit has noted that "major life activity" is to be understood in accordance with its "ordinary and natural meaning."  Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 151

(2d Cir. 1998).  Under this definition, controlling one's waste elimination, like breathing,

walking and speaking, is a major life activity, not just for the Plaintiff, but in general.  Id. at

151-52; Teachout v. N.Y. City Dep't of Educ., No. 04-CV-945(GEL), 2006 WL 452022 at *6,

n.8 (S.D.N.Y. Feb. 22, 2006) (noting that "every circuit court to address the issue has

concluded that waste elimination is a major life activity") (quoting Heiko v. Columbo Savings

Bank, 434 F.3d 249, 255 (4th Cir. 2006)).  Although the issue remains open in the Second

Circuit, courts have treated the inability to control waste elimination as a major life activity for

the purposes of considering a summary judgment motion.  Rider, 2006 WL 1520084, at *17-

18; Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 871 (2d Cir. 1998); Teachout, 2006 WL

452022 at *6; Mazza v. Bratton, 108 F. Supp. 2d 167 (E.D.N.Y. 2000), aff'd 9 Fed. Appx 36,

2001 WL 363513 (2d Cir. 2001).

        In considering whether an impairment is substantial, courts look at the nature and

severity of the impairment.  Ryan, 135 F.3d at 871.  Plaintiff testified at his deposition that he

experiences leakage only a few times per month.  Shannon Dep. (Dkt. No. 40, Attach. 10) at

182.  Plaintiff's physician, Dr. Fisher, testified that Plaintiff suffered from "slight leakage" at

night, meaning "one or two drops of urine not requiring a pad."  Fisher Dep.  (Dkt. No. 40,

Attach. 1) at 88.  Dr. Fisher further testified that Plaintiff experiences "a few drops of urine"

when lifting more than forty pounds.  Id. at 123, 128.  Dr. Fisher characterized Plaintiff's

incontinence as being of "[l]ow severity."  Id. at 129.  Fisher testified that "we have a scale

that is really about one to five or zero to five.  So, he's somewhere... between zero and one."

Id. at 141.  Other than the slight leaking incidents noted above, Plaintiff testified at deposition

that, aside from sometimes affecting his concentration when he leaks a few times per month,

his condition does not otherwise affect his activities of daily living.  Shannon Dep.  (Dkt. No. 40, Attach. 10) at 180-84.

Courts also look at the duration or expected duration of the impairment, as well as the existence of any actual or expected permanent or long term impact.  Capobianco v. City of New York, 422 F.3d 47, 57 (2d Cir. 2005).  Dr. Fisher testified that Plaintiff's incontinence has improved since the operation, Fisher Dep. (Dkt. No. 40, Attach. 1) at 142, and that it is possible that Plaintiff's incontinence could be cured.  Id. at 139.

In general, federal courts that have considered the issue have resisted finding that a plaintiff's incontinence, or inability to control waste elimination, supports a disability claim under the ADA.  Sacay v. Research Found. of the City of New York, 193 F. Supp. 2d 611, 629-630 (E.D.N.Y. 2002); Williams v. H.N.S. Mgmt. Co., Inc., 56 F. Supp. 2d 215, 221 (D. Conn. 1999) (holding that plaintiff's need to frequently urinate could only substantially limit a major life activity if restrooms were not accessible)  However, that does not indicate that it is impossible for a plaintiff's incontinence to rise to the level of a disability.  "[A] determination whether a person is substantially limited in his ability to perform a major life function is a fact-specific determination." Sacay, 193 F. Supp. 2d at 628; Ryan, 135 F. 3d at 872 (noting that other cases that have considered whether an individual with a certain impairment was disabled do not affect the conclusion whether a different person with that impairment is disabled).  Based on the facts of this case, it is clear that Plaintiff's condition affects his quality of life.  However, because his symptoms are so infrequent and, when they occur, relatively minor, an impartial fact-finder could not reasonably determine that Plaintiff is substantially limited in a major life activity, either that of waste elimination, or any other.

## 2. Having a Record of Disability

Plaintiff also argues that he qualifies under the ADA by virtue of having a record of an impairment that substantially limits one or more major life activities.  "Has a record of such impairment means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."  29 C.F.R. § 1630.2(k). Accordingly, to meet this standard, Plaintiff must show that there is a record, relied on by Defendant, which indicates that Plaintiff suffered from a substantially limiting impairment. Colwell, 158 F.3d at 645 ("[t]he record must be one that shows an impairment that satisfies the ADA; a record reflecting a plaintiff's classification as disabled for other purposes or under other standards is not enough.")  There is a record of Plaintiff's leaves of absence from work, his surgeries, his diagnoses, and his restrictions.  However, as discussed above, Plaintiff's medical condition did not ever reach the level of substantial limit of major life activity required to qualify under the ADA.  Accordingly, as Plaintiff has not shown, or even alleged, that his medical records or diagnoses reflect a more limiting impairment than he actually had, a reasonable jury could not find that Plaintiff meets this standard to qualify under the ADA.

## 3. Regarded as Disabled

The next question is whether Plaintiff is regarded as suffering from a physical impairment that substantially limits a major life activity.  Although it is has been established above that Plaintiff's impairments do not rise to the requisite level of "substantial limitation of one or more life activities," that does not preclude a finding that the Defendant regarded the Plaintiff as "disabled within the meaning of the ADA."  Capobianco, 422 F.3d at 57 ("A 'regarded as' claim turns on the employer's perception of the employee and is therefore a

question of intent, not whether the employee has a disability") (internal citations omitted).  In

discussing the third prong of qualification under the ADA, the Supreme Court determined:

> "There are two apparent ways in which individuals may fall within this statutory
>
> definition: (1) a covered entity mistakenly believes that a person has a physical
>
> impairment that substantially limits one or more major life activities, or (2) a covered
>
> entity mistakenly believes that an actual, nonlimiting impairment substantially limits
>
> one or more major life activities."

Giordano v. City of New York, 274 F.3d 740, 748 (2d Cir. 2001) (quoting Sutton v. United

Airlines, 527 U.S. 471, 489 (1999)).

It is through the second of these two possibilities that the Plaintiff may be qualified

under the ADA. Plaintiff has presented evidence that both Verizon EEO consultant Darrell

Nelson and Plaintiff's supervisor, Verizon Senior manager Joseph Messina, considered

Plaintiff to have a disability based on his job restrictions. Plntf's Statement of Material Fact

(Dkt. No. 37) at ¶¶ 21, 23; Deft's Response to Plntf's Statement of Material Fact (Dkt. No.

44) at ¶ 21, 23;  Nelson Dep. (Dkt. No. 40, Attach. 2) at 189-90.  However, "[t]o prevail under

the 'regarded as' provision of the ADA, a plaintiff must show more than 'that the employer

regarded that individual as somehow disabled; rather, the plaintiff must show that the

employer regarded the individual as disabled *within the meaning of the ADA.*' Jacques, 386

F.3d at 201 (quoting Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 646 (2d Cir.

1988)) (emphasis in original).  Defendant's perception of the severity of Plaintiff's

impairment remains a critical issue and one that should be decided at trial.  There is

substantial evidence in the record that Defendant's employees understood Plaintiff's

limitation to be significant and that he was denied certain positions because of his limitation.

The ADA was enacted by Congress because "society's accumulated myths and fears about

disability and disease are as handicapping as are the physical limitations that flow from

actual impairment." <u>Sutton</u>, 527 U.S. at 489 (quoting <u>School Bd. of Nassau County v. Arline</u>,

480 U.S. 273, 284 (1987)).  A reasonable jury could conclude that Defendant's refusal to

place Plaintiff in a technician position was a discriminatory failure to accommodate, based

on a misperception of Plaintiff's limitation and the degree to which it limited his ability to

work.

This Court has found that a reasonable jury could not find that Plaintiff was

actually disabled within the meaning of the ADA or that he had a record of being disabled

within the meaning of the ADA.  However, because a reasonable jury could find that Plaintiff

was discriminated against because he was regarded as disabled within the meaning of the

ADA, the Defendant's Motion for summary judgment must fail as to Plaintiff's

accommodation claim .


### B. Hostile Work Environment

Defendant moves to dismiss Plaintiff's claim that he was subjected to a hostile work

environment on account of his disability.  Plaintiff has failed to respond to this part of

Defendant's Motion.  The standards for a hostile work environment claim are well-settled.

As the Second Circuit has explained:

> In order to establish a claim of hostile work environment, a plaintiff must
> produce evidence that the workplace is permeated with discriminatory
> intimidation, ridicule, and insult, that is sufficiently severe or pervasive to
> alter the conditions of the victim's employment and create an abusive
> working environment... Plaintiff must show not only that [he] subjectively

perceived the environment to be abusive, but also that the environment was objectively hostile and abusive....

Isolated incidents typically do not rise to the level of a hostile work environment unless they are of sufficient severity to alter the terms and conditions of employment as to create such an environment... Generally, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive....

To analyze a hostile work environment claim, we look to the record as a whole and assess the totality of the circumstances,... considering a variety of factors including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance, ...  We must also consider the extent to which the conduct occurred because of plaintiffs' [disability]....

Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006) (internal quotations and citations omitted).

In opposition to Defendant's Motion, Plaintiff has failed to point to sufficient evidence upon which a fair-minded trier of fact could reasonably conclude that he was subjected to sufficiently severe or pervasive conditions on account of his disability that altered the terms and conditions of his employment.  Plaintiff's allegations that co-workers spoke rudely to him and made snide comments, that certain other employees spoke to him in a degrading fashion, and that his supervisor repeatedly threatened to send him home, failed to accommodate his restriction, and commented that Plaintiff could not perform the field technician position with restrictions do not have the severity or pervasiveness to meet the standard of a hostile work environment.  Further, with the possible exception of any actions or comments made by his supervisor, none of the other comments are connected with Plaintiff's claimed disability.  Shannon Dep. (Dkt. No. 40, Attach. 1) at 227-233.  Accordingly, the hostile work environment claim must be dismissed.

- 12 -

*C. Retaliation*

Plaintiff also alleges that Defendant retaliated against him by: (1) transferring him to the Construction Control unit in January 2004; and (2) failing to respond to Plaintiff's complaints of pain in his hands.  According to Plaintiff, the transfer caused him to lose the opportunity for significant overtime pay and training opportunities.

To establish a claim of retaliation, Plaintiff must demonstrate that: (1) he engaged in protected activity; (2) Defendant was aware of that protected activity; (3) he suffered an adverse employment action; and (4) there is a causal connection between the protected activity and adverse employment action.  See Warner v. City of New York, No. 03 Civ. 9850(RMB), 2007 WL 737477, at *7 (S.D.N.Y. Mar. 9, 2007) (citing Kessler v. Westchester County Dep't of Soc. Servs., 461 F. 3d 199, 205-06 (2d Cir. 2006)).

1.  The Transfer to Construction Control

Plaintiff has not provided sufficient evidence to establish a causal connection between any complaint that he made and his reassignment to the Construction Control unit. Additionally, he has provided no evidence to call into doubt Defendant's justification for the reassignment: an attempt to accommodate Plaintiff's lifting restriction. As noted above, the refusal to place Plaintiff in a technician position might be found to be discriminatory, but no reasonable jury could find, based on the record, that it was retaliatory.

2.  Hand Pain

Plaintiff also argues that Defendant retaliated against him by failing to respond to his complaints of hand pain.  In any event, Plaintiff was cleared by his physician to return to the

Construction Control unit without any restrictions.  In response to his concerns that his condition was being aggravated, Defendant offered Plaintiff the opportunity to request a reasonable accommodation and submit medical documentation in support of the request. See Dft's Reply to Response to Motion (Dkt. No. 44, Attach. 8, Ex. U) at pp. 2-3.  Plaintiff failed to respond to Defendant's offer. Accordingly, his claims that Defendant refused to respond to his complaints in retaliation for protected activity must fail.


## IV.  CONCLUSION

Therefore, upon review of the facts and the law, and for the foregoing reasons, it is hereby

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No. 29) is **GRANTED** as to Plaintiff's hostile work environment and retaliation claims and **DENIED** as to Plaintiff's accommodation claim, to the extent that the alleged discrimination is based on Defendant regarding Plaintiff as disabled under the terms of the ADA ; and it is further

**ORDERED**, that Plaintiff's Cross-Motion for summary judgment (Dkt. No. 35) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve copies of this Order on all parties.

**IT IS SO ORDERED**.


DATED:    April 13, 2007
          Albany, New York

Lawrence E. Kahn
U.S. District Judge