UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBERT SHANNON,

                                        Plaintiff,

                v.                                            1:05-CV-0555 (LEK/DRH)

VERIZON NEW YORK INC.,

                                        Defendant.
_____

## MEMORANDUM-DECISION AND ORDER

Plaintiff Robert Shannon ("Plaintiff" or "Shannon") commenced the instant action pursuant

to the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the New York

Human Rights Law ("NYHRL"), N.Y. EXEC. LAW § 290 et seq., claiming that Defendant Verizon

New York Inc. ("Defendant" or "Verizon") failed to provide him with reasonable accommodations,

subjected him to a hostile work environment on account of his disability and retaliated against him

for engaging in protected activity.  See generally Second Am. Compl. (Dkt. No. 77).  Currently

before the Court is Defendant's Motion for partial summary judgment (Dkt. No. 94).

## I.    BACKGROUND

On May 9, 2005, Plaintiff commenced the underlying action.  Compl. (Dkt. No. 1); Am.

Compl. (Dkt. No. 14).[1]  Both parties filed Motions for summary judgment on these claims.  Dkt.

Nos. 29, 35.   On April 13, 2007, this Court denied Plaintiff's cross-Motion for summary judgment

and granted Defendant's Motion for summary judgment as to Plaintiff's hostile work environment

_____

[1]  See Shannon v. Verizon New York Inc., 1:05-CV-0555, 2007 U.S. Dist. LEXIS 28096
(April 13, 2007), for a full recitation of the facts of Plaintiff's underlying discrimination claims.

and retaliation claims and denied as to Plaintiff's accommodation claim, to the extent that the alleged discrimination is based on Defendant regarding Plaintiff as disabled.  Dkt. No. 54.  The Court denied both parties' Motions for reconsideration on November 5, 2007.  Dkt No. 71.

On September 27, 2007, Plaintiff returned from vacation to Verizon's Construction Control unit in Menands, New York and learned from his co-worker, Liz Weis ("Weis"), that another Verizon employee had committed suicide.  Pl. Aff. (Dkt. No. 106) ¶¶ 6, 7; Pl. Dep. (Dkt. 103) 7:23-25, 22:12-25:19.  The parties dispute what Plaintiff said in response to this news.  Plaintiff reports "I told Liz Weis that I thought his suicide was a waste of a life and you would think that if things were bothering him that much, he would find other ways to deal with it and eliminate the problem."  Pl. Aff. ¶ 7; see also Pl. Dep. 25:25-26:2 ("If anything was bothering him, don't you think he would have gone postal?").  In contrast, Defendant reports that Plaintiff reportedly remarked to Weis: "What a waste of life.  If someone was bothering me, I would go postal and that would solve the problem and I would laugh from my jail cell."  McNicholas Aff. (Dkt. No. 96) ¶ 4 & Ex. B; Leonard Aff. (Dkt. No. 68) ¶ 3.  According to Defendant, Plaintiff repeated these remarks to his supervisor and word of Plaintiff's comments spread through the workplace, creating concern amongst Plaintiff's co-workers.  McNicholas Aff. ¶ 3 & Ex. A; Leonard Aff. ¶¶ 3, 4.

Both parties agree, however, that that afternoon Plaintiff was interviewed by members of Verizon's security department and told that his comments alarmed Weis and other co-workers.  McNicholas Aff. Ex. B; Pl. Aff. ¶¶ 8-11; Pl. Dep. 30:24-41:5.  Verizon placed Plaintiff on paid administrative leave and, as a condition of that leave, directed him to submit to a mental fitness-for-duty examination through its Employee Assistance Program ("EAP"), to determine whether he posed a risk to himself or others.  Def. Aff. (Dkt. No. 98) ¶ 10; Pl. Dep. 64:3-9.  Plaintiff refused to

sign the release form provided by the EAP that would authorize the EAP to inform Plaintiff's supervisors that Plaintiff had participated in the EAP and was following the EAP's recommended course of treatment, if any.  Pl. Dep. 78:3-79:2; Leonard Aff. ¶ 10. Instead, Plaintiff signed the form but crossed out the portion of the form authorizing the release of information to Verizon and returned the altered form to Verizon.  Pl. Dep. 78:3-79:2, Bloom Aff. (Dkt. No. 95) Ex. C.

On October 18, 2007, Defendant transferred Plaintiff to unpaid leave status based on Plaintiff's refusal to complete the required paperwork and to comply with the terms and conditions of his paid administrative leave.  Def. Aff. ¶¶ 13-14; Pl. Dep. 93:11-18; Leonard Aff. ¶ 11.  Plaintiff retired from Verizon, effective December 15, 2007.  Pl. Dep. 7:23-8:20; Bloom Aff. Ex. B.  It is contested whether this retirement was voluntary.  Id.

Following the events of September 2007, Plaintiff filed a Motion for a temporary restraining order and an order to show cause in the wake of his transfer to unpaid administrative leave.  Dkt. No. 63.  Plaintiff alleged that the events of September 2007 constituted retaliation for the ongoing suit against Defendant.  A show cause hearing was held on November 7, 2007.  Dkt. No. 73.  In an Order dated November 14, 2007, this Court denied Plaintiff's Motion for preliminary relief without prejudice on the grounds that Plaintiff had not sought leave to amend his Complaint to reflect the new allegations.  Dkt. No. 76.  Subsequently, Plaintiff filed a Motion for leave to amend his Complaint for the second time and renewed his Motion for a preliminary injunction.  Dkt. No. 79.  This Court granted Plaintiff's Motion to amend the Complaint and denied Plaintiff preliminary relief.  Dkt. No. 82.

On February 27, 2009, Defendant filed the Motion for partial summary judgment that is currently before this Court.  Dkt. No. 94.  Plaintiff filed its Memorandum of law in opposition to

Defendant's Motion for partial summary judgment on April 1, 2009.  Dkt. No. 104.  Defendant

subsequently filed it reply Memorandum of law in support of Defendant's Motion for partial

summary judgment.  Dkt. No. 109.

## II.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); Beard v. Banks, 548 U.S.

521, 529 (2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  A court must "'resolve

all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party

opposing the judgment.'" Brown v. Henderson, 257 F.2d 246, 251 (2d Cir. 2001) (quoting Cifra v.

General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).  "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary

judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden of demonstrating that no genuine issue of

material fact exists for trial, the nonmovant "must do more than simply show that there is some

metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S.

574, 586 (1986) (citations omitted).  The nonmovant "must come forth with evidence sufficient to

allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted).  The

nonmoving party "may not rely merely on allegations or denials in its own pleadings;" bald

assertions unsupported by evidence are insufficient to overcome a motion for summary judgment.

FED. R. CIV. P. 56(e)(2); see Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins.

Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990). "Factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony." Brown, 257 F.3d at 251 (citation omitted).

## III.   DISCUSSION

Plaintiff's second amended Complaint contains six claims for relief, four of which duplicate claims contained in the original Complaint and that were adjudicated by this Court's Order dated April 13, 2007. Second Am. Compl. (Dkt. No. 77). Specifically, Plaintiff's First, Second, Fifth and Sixth Claims for Relief, in the second amended Complaint are identical to the First, Third, Fifth and Sixth Claims for Relief, respectively, in the original Complaint. Compare Am. Compl. ¶¶ 26-27, 30-32, 34-37 with Second Am. Compl. ¶¶ 33-26, 41-44.

This Court previously granted summary judgment on each of these claims with the exception of Plaintiff's accommodation claims for the sole issue of whether Defendant failed to reasonably accommodate Plaintiff's perceived disability. For further detail, the Court makes reference to the Order dated April 13, 2007. Dkt. No. 54. Plaintiff alleges no new facts or legal theories in the second amended Complaint to revive these claims, each of which arise from events occurring prior to April 2007. Accordingly, Plaintiff's First, Second, Fifth and Sixth Claims for relief have already been adjudicated. See Dkt. No. 54. Summary judgment is, therefore, granted as to all of these claims with the exception of Plaintiff's accommodation claim to the extent it was based on a theory that Plaintiff was "regarded as" disabled within the meaning of the ADA and the NYHRL.

**a.   Fourth Claim for Relief - Psychiatric Evaluation and Verification Violated the ADA and the NYHRL**

5

The ADA provides that an employer may "not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). As the statute makes clear, this provision of the ADA prohibits only those medical examinations or inquiries that are not "job related and consistent with business necessity." Id.; see also Kressler v. Four Winds Hospital, No. 01 Civ. 10993, 2002 WL 1300057, at *2 (S.D.N.Y. June 11, 2002); Lent v. Goldman Sachs & Co., No. 97 Civ. 9413, 1998 WL 915906, at *8 (S.D.N.Y. Dec. 30, 1998).

Plaintiff claims that Verizon's policy of requiring that he submit to a mental fitness-for-duty examination through the EAP, to determine whether he posed a risk to himself or others, and release general information regarding the satisfactory completion of this examination as a condition of his employment constitutes a *per se* violation of the ADA, pursuant to 42 U.S.C. § 12112(d)(4)(A), and the NYHRL. Second Am. Compl. ¶¶ 39-40. Verizon contends that based on the business necessity exception, it is entitled to summary judgment on this claim. Dkt. No. 97.

To fall under this exception to the general prohibition against medical examinations, "an employer must show that the asserted business necessity is 'vital to the business,' that the examination 'genuinely served the asserted business necessity,' and that 'the request is no broader or more intrusive than necessary.'" Rivera v. Smith, No. 07 Civ 3246, 2009 WL 124968, at *4 (S.D.N.Y. Jan. 20, 2009) (quoting Conroy v. New York Dep't of Corr. Servs., 333 F.3d 88, 98 (2d Cir. 2003). "The employer need not show that the examination or inquiry is the only way of achieving a business necessity, but the examination or inquiry must be a reasonably effective method of achieving the employer's goal." Conroy, 333 F.3d at 98. The Second Circuit has

explicitly stated that "ensuring that the workplace is safe and secure" may constitute a business necessity.  Id. at 97; see also Rivera, No. 07 Civ. 3246, at *4.

In this case, the record is clear that Verizon's request that Plaintiff submit to a mental fitness-for-duty exam with EAP and release verification of his successful attendance before being allowed to return to work was consistent with business necessity.  It is Verizon's policy that "[a]ll perceived threatening or hostile behavior will be taken seriously, regardless of intent."  McNicholas Aff. Ex. C.  In accordance with this policy, Verizon launched an investigation as soon as Plaintiff's alleged statement was reported.  Def. Aff. ¶¶ 4-8; see also McNicholas Aff. Ex. A (In an e-mail to John McNicholas, a Senior Investigator in Verizon's Security Department, Jim Murray, Plaintiff's supervisor, wrote that he "did not feel comfortable with Plaintiff's statement."); see also Pl. Aff. Ex. C (Under section 6.2 of Verizon's Workplace Violence Prevention Policy, "[a]ny report or threat of violence, will be evaluated confidentially as quickly as practical.  Appropriate action will be taken, where possible, in order to protect the employee from further violent or threatening acts.").  Only after conducting this investigation did Verizon place Plaintiff on paid administrative leave.  Def. Aff. ¶ 9.

As a condition of his paid administrative leave, Verizon directed Plaintiff to submit to EAP for a mental fitness-for-duty examination to determine whether he posed a threat to himself or others.  Id. ¶¶ 9,10.  Further, Plaintiff was required to sign a release form provided by the EAP that would authorize EAP to inform Plaintiff's supervisors whether he had in fact participated in the EAP and was following the EAP's recommended course of treatment.  Id.  Plaintiff, however, refused to sign the release form.  Pl. Dep. 78:3-79:2; Pl. Aff. Ex. C and E.  In fact, on November 28, 2007, after Plaintiff had already declined to sign the release, Verizon sent Plaintiff a letter enclosing

a new release and the assurance that "the release provides for disclosure of the following information *only*: Contact(s) with the EAP; Participation or non-participation in recommended plan of action; Continuation or discontinuation in recommended plan of action; and Verification that the employee is safe to return to work." Pl. Aff. Ex. E (emphasis added).  Plaintiff still declined to submit the release and was consequently transferred to unpaid administrative leave.  Leonard Aff. ¶ 11; Pl. Aff. 13.

Here, Verizon took action to ensure workplace safety in accordance with established policy. See Rivera, No. 07 Civ. 3246, at *4; see also Conroy, 333 F.3d at 98.  Workplace safety, most certainly, constitutes business necessity and having Plaintiff submit to psychological evaluation prior to returning, although not the only way, is a reasonably effective method of achieving this goal.  See Rivera, No. 07 Civ. 3246, at *4 (holding that employer's requirement that a plaintiff submit to a psychiatric examination before being allowed to return to work after a co-worker complained that she felt threatened and unsafe by his behavior was "for an appropriate business necessity – ensuring a safe work environment for all of its employees").  Accordingly, Verizon did not violate the ADA when it required that Plaintiff submit to psychological evaluation and release verification of the successful completion of this evaluation as a condition of paid administrative leave.

Further, "[a] claim of disability discrimination under the New York State Human Rights Law . . . is governed by the same legal standards as govern federal ADA claims.  Thus, to the extent that [a plaintiff] brings a state-law disability-discrimination claim, it survives or fails on the same basis as his ADA claim."  Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 n. 3 (2d Cir. 2006) (internal citations omitted); see also Parker v. Columbia Pictures Indus., 203 F.3d 326, 332 n. 1 (2d

Cir. 2000).  Therefore, since Plaintiff's claim under the ADA fails, so too does his claim under the NYHRL.

**b.     Third Claim for Relief -  Psychiatric Evaluation and Verification Constituted Unlawful Retaliation under the ADA and the NYHRL**

To establish a *prima facie* case of retaliation, a plaintiff must show (1) that he engaged in a protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action.  See Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 608 (2d Cir. 2006).  If the plaintiff meets this burden, the defendant can "then points to evidence of a legitimate, not retaliatory reason for the challenged employment decision."  Cifra, 252 F.3d at 216.  If the defendant does so, "the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely pretext for the impermissible retaliation."  Id.  Here, not only has Plaintiff failed to sustain his burden of establishing a *prima facie* case but Plaintiff has also failed to rebut Defendant's proffered "legitimate, not retaliatory reason" for the challenged employment decision.

Plaintiff appears to allege that Defendant retaliated against him for filing his prior complaints of discrimination by: (1) placing him on paid administrative leave, (2) forcing him to submit to a mental-fitness-for duty examination and requiring him to release verification of the successful completion of this examination as a condition of his paid administrative leave, (3) transferring him to unpaid leave, and (4) allegedly refusing to allow him to take paid vacation days while on unpaid leave.[2]  Second Am. Compl. ¶ 37-38 ("Plaintiff further alleges that by retaliating

---

[2]  Plaintiff, however, acknowledged at his deposition that he was paid for all unused vacation days when he retired and conceded that the issue now is "no longer in dispute."  Pl. Dep. 131:5-10.

against Plaintiff including punishing him because he engaged in protected activity and protested Defendant's unlawful conduct requiring a psychiatric examination and the release of personal medical data, Defendant violated" the ADA and the NYHRL).  However, beyond this bald assertion in his Complaint, Plaintiff fails to proffer any evidence of retaliation.  It is well settled in the Second Circuit that "'[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact.'"  Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)).  Accordingly, Defendant is entitled to judgment as a matter of law on this claim.

Even if Plaintiff had sustained his burden of establishing a *prima facie* case of retaliation, Plaintiff has not pointed to any evidence that Verizon's proffered "legitimate, not retaliatory" reason is pretext.  Defendant asserts that its decision to place Plaintiff on paid administrative leave and require that Plaintiff submit to a mental-fitness-for-duty examination before returning to work as a condition of his paid leave was to ensure the safety of Verizon's workplace.  See generally Dkt. No. 97.  It is clear, as this Court has discussed above that workplace safety is a legitimate, not retaliatory reason, for taking these actions.  Plaintiff's "conclusory allegation" is not sufficient to create a genuine issue of fact.  Accordingly, Defendant is entitled to summary judgment on this federal retaliation claim.

As the Court noted above, since Plaintiff has failed to present a triable issue of fact for his federal retaliation claim, *a fortiori*, summary judgment should be granted on Plaintiff's NYHRL retaliation claim.  See, e.g., Graves, 457 F.3d at 184 n. 3; Parker, 203 F.3d at 332 n. 1.

**IV.    CONCLUSION**

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendant's Motion for partial summary judgment (Dkt. No. 94) is

**GRANTED** and the sole issue remaining for trial is whether Defendant failed to reasonably

accommodate Plaintiff's perceived disability; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:          May 29, 2009
               Albany, New York

                                 _____
                                 Lawrence E. Kahn
                                 U.S. District Judge

11