UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
ROBERT SHANNON,

        Plaintiff,

  v.

VERIZON NEW YORK, INC.,              1:05-CV-0555 LEK/DRH

        Defendant.

-------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF'S MOTION FOR RECONSIDERATION**

Preliminary Statement

Plaintiff submits this Motion for Reconsideration of the Court's May 29, 2009 Decision and Order because the Court did not discuss or recognize Defendant's duty to first adequately investigate the circumstances surrounding Plaintiff's alleged "postal" remark before suspending him, first with and then without pay.   This duty to investigate and verify facts is explained by the Court of Appeals recently in Sassaman v. Gamache, ___ F. 3d ___, No. 07-2721-cv (2d Cir. 2009) (decided May 22, 2009, NYLJ May 29, 2009, pp. 25-26, 26 col. 5).

Such required prior adequate investigation includes determining, among other issues,  whether Defendant adhered to  its "Workplace Violence

Policy". Applying settled Second Circuit law reaffirmed in <u>Sassaman</u>, an inference of retaliatory intent "may be established by … the sequence of events leading to the Plaintiff's" suspension and how Verizon addressed them. This Court should have concluded on the evidence that a reasonable jury could find under the circumstances that Defendant harbored a retaliatory intent toward Plaintiff and that this question of motive should be left for trial. "The failure of an employer to conduct an adequate investigation or to undertake an appropriate response can constitute evidence in support of a Title VII plaintiff's allegations … [The Court of Appeals] observed that, in the Title VII context, 'an employer must consider not only the behavior of the alleged offender, but also the response, if any, of its managers." citing <u>Malik v. Carrier Corp.</u>, 202 F.3d 97, 106 (2d Cir. 2000)." <u>Sassaman v. Gamache</u>, id. <u>Sassaman</u> was decided on May 22, 2009, well after the parties' memoranda were submitted on Defendant's present summary judgment motion. Plaintiff requests reconsideration based on <u>Sassaman</u> principles which Verizon failed to follow.

Plaintiff's discriminatory retaliation allegations in the present case are closely analogous to the discrimination allegation and the Court of Appeals' requirement of an adequate investigation of Plaintiff's claim as discussed in <u>Sassaman</u>. In the present case, there was no investigation by Defendant

2

under Defendant's Workplace Violence Policy, let alone an "adequate" one concerning Plaintiff's alleged remark, whether it was cause for a suspension, or indeed whether the remark was made at all as assumed by Defendant, and denied by Plaintiff.

## Discussion

Defendant's "Workplace Violence Policy" includes a Section 6.0, "Management Verification and Assessment of Threats or Acts of Violence". See Exhibit C to Plaintiff's March 31, 2009 affidavit. Defendant's Section 6.1 states, *inter alia*:

> … Facts should be separated from emotions. If an employee is suspected of making the threat, local management should determine:
> - Who was threatened and who made the threat? Have there been prior incidents of a similar nature involving … the threat maker?
> - What was the act/threat, what precipitated the act/threat, under what circumstances was the threat made or act carried out? What was the actual intent if the employee making the threat and what was the environment in which the threat was made?
> - When was the threat made and/or when was the threat to be carried out?
> - Where was the threat made and/or where was the threat to be carried out?
> - How was the threat made and/or where was the threat to be carried out?
> - Why did the employee making the threat select the particular victim(s)? …
> - Were there any witnesses to the act/threat or other evidence to support either side of the story?

Section 6.5 states:

> "Once the threat has been <u>verified and understood</u>, the [Threat Assessment Team] will assess the seriousness of the threat so that a suitable, tailored response can be initiated." (Emphasis added.)

Defendant did not engage in this required, detailed investigation required by its own policy. The apparent basis for Plaintiff's immediate suspension on September 27, 2007 was the investigator's unsupported interpretation of what a "rational person" would believe and supervisor James Murray's feeling that he was merely "uncomfortable" with Plaintiff's purported remark. This is a far cry from what must be found under the Defendant's "Workplace Violence Policy" in order to proceed further and is deficient under <u>Sassaman</u>.

Had Defendant timely undertaken and followed its own Policy of investigation, no suspension would have occurred in the first place and no mental health exam of an employee of 37 years with an unblemished record would have been demanded. These circumstances, including the hearsay affidavits of Defendant, are strong evidence creating inferences that a rational jury can weigh in determining Defendant's retaliatory motive.[1] This

---

[1] Merely interviewing Plaintiff, where he denied making any threat, and noting Murray's "discomfort", cannot be held to "conducting this investigation" adequately, to preclude an inference of unlawful retaliation drawn against Verizon.

4

point should have been discussed by the Court under the <u>Sassaman</u> holding and the jury allowed to undertake its fact-finding role on motive at trial. The Court, respectfully, was not therefore correct in stating that Plaintiff failed "to proffer any evidence of retaliation" or show that Defendant's explanation was pretextual. Decision at 10. The facts show that Defendant did not engage in an adequate investigation of the circumstances. Under <u>Sassaman</u> and cases cited therein, fact questions of inferences and Defendant's motivation were raised for the jury's resolution.

It is important to again emphasize that Plaintiff does not contend that workplace safety is not a legitimate concern for an employer or a company's employees. But where, as here, Verizon's actions under the guise of safety can be shown by the evidence to be precipitous, wrong on the facts or incomplete a rational jury could infer from such employer action and inaction that the employer acted with an unlawful retaliatory intent. This is not a question for the Court to resolve on summary judgment rather than the jury at trial. Taking these questions of fact from the jury was not correct and should be reconsidered.

Put another way, a major evidentiary issue of intent for the jury is to determine whether a claimed "business necessity" for a mental examination, neutral on its face, was motivated by unlawful retaliation against Plaintiff.

Plaintiff should be permitted, based on the evidence, to show that the demanded mental examination was motivated by Verizon's retaliatory intent and thus was not "job related and consistent with business necessity" or "vital to the business" or "genuinely served the asserted business necessity". Decision at 6.

Such evidence as Verizon's ongoing litigation battle with Plaintiff over the failure to accommodate his disability, Verizon's James Murray and Barbara Brayton as principal actors in both Verizon's alleged refusal to reasonably accommodate Plaintiff, his September- October 2007 precipitous suspensions, and Verizon's failure to adequately investigate the so-called postal "threat" before suspension must be considered.  They provide sufficient evidence for a jury to find that Verizon unlawfully retaliated against Plaintiff by suspending him and ordering a mental examination without following <u>Sassaman</u> principles.

Plaintiff further renews his request for this Court to rule on Plaintiff's request to view the unredacted Murray to Brayton September 27, 2007 email which Defendant refuses to provide.  Exhibit A to McNicolas affidavit.   As Plaintiff noted to this Court on the summary judgment motion, this email may well contain evidence of Verizon's unlawful intent and Plaintiff is entitled to view it.

6

In assessing this Motion for Reconsideration, it is important to again emphasize that there was no good faith reason to have suspended Plaintiff <u>in the first place</u> because he never threatened anyone or behaved in a hostile manner.  Under Verizon's Workplace Violence Policy, these are the <u>only</u> bases on which Defendant could take action against Plaintiff.  Since no threat against any person can reasonably be found to have been made by Plaintiff in his remark (which is contested) to Liz Weis or James Murray, Investigator McNicolas' "conclusion" in paragraph 5 of his affidavit that such disputed comment "violated" Verizon's policy "because a reasonable person would interpret his comment about 'going postal' as a potential threat of physical violence" is an irrational made-up and extremely strained interpretation which should not be given any weight.

McNicolas' bald conclusion triggered the entire Verizon house of cards that Defendant caused to fall on Plaintiff.  McNicolas [and Verizon's follow-up] conclusion however is unsupported, unfair, and entitled to no weight.  In Verizon's rush to suspend Plaintiff, McNicolas failed to interview Weis, the only person on this record who actually heard Plaintiff's comment, to find out what she heard and whether she felt threatened by Plaintiff or to so any other investigation.  Defendant failed to submit an

7

affidavit from Weis or any other stating they felt threatened by Plaintiff's comment.

Murray's statements that he felt "uncomfortable" with Plaintiff's comment [again it is contested as to what Murray heard] simply cannot rationally form the basis of a "threat" to Murray or anyone else.  Feeling "uncomfortable" provides no basis on which to proceed further against Plaintiff.

The motivation for Verizon's wholly unsupported self-serving creation of a "threat" scenario against Plaintiff therefore creates fact issues for a rational jury.  The jury certainly can draw the inference, under the circumstances of this case, that a discriminatory reason motivated Verizon's actions against Plaintiff, not any threat.  That a "rational person" can find Plaintiff's contested comment a "potential threat of physical violence" is highly doubtful and in any event a question of fact for the jury, not to be assumed by this Court.  If the jury's answer is that it could not be so interpreted, as is likely, then Verizon's subsequent suspension and demand for a psychiatric examination are improper acts which the jury can find were unlawfully retaliatory.[2]  These are jury questions under Sassaman which the

---

[2] Plaintiff stated in his affidavit opposing summary judgment, that he was refused an appointment by Dr. Williams and thereafter in October 2007 requested an appointment

8

Court should so conclude. Verizon should not be assumed on summary judgment to have been motivated by legitimate concerns in suspending Plaintiff.

## Conclusion

For all the foregoing reasons, Plaintiff respectfully requests that Plaintiff's motion for reconsideration be granted and his unlawful retaliation and mental examination claims be presented for jury trial.

Dated: June 7, 2009

                                            Respectfully submitted,

                                            __/s/_____
                                            RICHARD B. WOLF       No.105036
                                            Attorney for Plaintiff
                                            510 Haight Avenue, Suite 202
                                            Poughkeepsie, New York 12603
                                            (845) 454-1200

---

with another psychiatrist.  Plaintiff never refused to see a psychiatrist as requested by Defendant.